KIMMEL & SILVERMAN, P.C.
Jacob U. Ginsburg, Esq. (NJ 039312011)
30 East Butler Ave.
Ambler, PA 19002
Telephone: (267) 468-5374
Facsimile: 215-540-8817
jginsburg@creditlaw.com
teamkimmel@creditlaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**TRENTON VICINAGE**

| | |
|---|---|
| **LYNN GUENTHER**, *individually and on behalf of all others similarly situated,*<br><br>*Plaintiff,*<br><br>v.<br><br>**SUMMIT FINANCIAL, LLC,**<br><br>*Defendant.* | **Case No.:**<br><br>**Jury Trial Demanded** |

## CLASS-ACTION COMPLAINT

Plaintiff, Lynn Guenther ("Guenther" or "Plaintiff") individually and on behalf of all others similarly situated, files this Class-Action Complaint against Defendant Summit Financial, LLC ("Summit" or "Defendant"). In support thereof, Plaintiff states as follows:

## NATURE OF THE CASE

Plaintiff brings this action on behalf of herself and others similarly situated under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"). Plaintiff alleges Summit violated the rights of Plaintiff and others similarly situated for violation of rules relating to the National Do-Not-Call Registry and the Internal Do-Not-Call rules.

## BACKGROUND ON THE TCPA

1. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights – specifically, the right to be left alone from unwanted telemarketing calls.

2. A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

3. The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) et seq., affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

4. Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

5. 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period on their phone, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

6. Courts have also recognized a private cause of action under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d) for failing to implement adequate internal do-not-call policies.

7. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the Federal Communications Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

8. In fact, in 2021 alone, there were over five million complaints from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 5, 2022), https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

9. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, The Wall Street Journal, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

**JURISDICTION AND VENUE**

10. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

11. This Court has personal jurisdiction over Defendant, as Defendant is headquartered and systematically conducts business in the State of New Jersey.

12. Furthermore, Defendant knowingly and purposefully availed itself to the State of New Jersey when it contacted Plaintiff's phone numbers each beginning with an 848 area-code.

13. Plaintiff received the calls at issue and experienced the associated harm within this District.

14. Accordingly, personal jurisdiction exists, and venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

15. Plaintiff Lynn Guenther is an individual who resides in Bayville, New Jersey.

16. Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

17. Defendant Summit Financial, LLC ("Summit") is a limited liability company with its headquarters at 4 Campus Drive, Parsippany, New Jersey 07054.

18. Defendant is a "person" as that term is defined by 47 U.S.C. §153(39).

19. Defendant acted through its employees, agents, vendors, contractors, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees and representatives.

## FACTUAL ALLEGATIONS

20. At all times relevant hereto, Plaintiff, Lynn Guenther owned a cell phone, the number for which was (848) xxx-6700.

21. Plaintiff registered that cell phone number on the National Do Not Call Registry on July 3, 2003 in order to obtain solitude from invasive and irritating telemarketing calls.

22. At all times relevant hereto, Plaintiff also owned a second cell phone, the number for which was (848) xxx-9915.

23. Plaintiff also registered that cell phone number on the National Do Not Call Registry on January 28, 2020 in order to obtain solitude from invasive and irritating telemarketing calls.

24. At all times relevant hereto, Plaintiff used both cell phones primarily for personal and residential purposes, such as speaking with friends and family.

25. Between October of 2025 and February of 2026, Defendant sent Plaintiff at least eight (8) unsolicited and unconsented phone calls and five (5) voicemails, soliciting money lending services.

26. In mid-October of 2025, Plaintiff received a phone call to her 6700 number from an individual who identified themselves as calling on behalf of Summit Financial and attempted to solicit a loan to Plaintiff. In response to that solicitation, Plaintiff responded that she was not interested and that she did not wish to be contacted again.

27. On November 10, 2025, at 2:35pm, Plaintiff received another call to her 6700 number, again from an individual identifying themselves with Summit. Plaintiff again indicated she was not interested and reiterated her request not to be contacted.

28. That same day, at 3:17pm, Plaintiff received another call to her 6700 number, again from an individual identifying themselves with Summit. Plaintiff again indicated she was not interested and once again demanded Summit stop calling her.

29. On November 20, 2025, Plaintiff received a call to her 6700 number from (833) 205-8456, which she did not answer. Plaintiff then received a voicemail which stated:

> Hello, this is Aubrey with Summit Financial. I'm calling to remind you that your loan offer that was sent mid-October is still active. It is available. I went ahead and updated your offer with our current rate promotion increasing the loan amount to over $49,000. If you plan on using it. Please call me back at the telephone number 888-399-3926. Again, that's 888-399-3926. Thank you.

30. Plaintiff has continued to receive similar calls and voicemails to her 6700 number and 9915 number on several other occasions.

31. A non-exhaustive list of occasions on which Defendant called and/or left a voicemail, of which Plaintiff is currently aware, is listed below:

| **Date:** | **Time:** | **Sent To:** | **Caller ID:** | **Left Voicemail** |
|---|---|---|---|---|
| October 2025 | Unknown | 6700 | Unknown | No |
| November 10, 2025 | 2:35 PM | 6700 | (833) 989-5237 | No |
| November 10, 2025 | 3:17 PM | 6700 | (877) 649-2805 | No |
| November 20, 2025 | 2:55 PM | 6700 | (833) 205-8456 | Yes |
| November 25, 2025 | 1:38 PM | 9915 | (877) 656-0857 | Yes |
| December 5, 2025 | 1:21 PM | 9915 | (866) 273-0962 | Yes |
| January 15, 2026 | 2:47 PM | 6700 | (877) 434-1426 | Yes |
| February 3, 2026 | 5:17 PM | 6700 | (866) 313-0202 | Yes |

32. These calls were not made for "emergency purposes," but rather for solicitation purposes.

33. Plaintiff did not have any pre-existing business relationship with Defendant.

34. Plaintiff did not provide Defendant with her prior express consent to be contacted for solicitation purposes.

35. Defendant knew or should have known its calls were unwanted and irritating due to Plaintiff's repeated requests not to be contacted.

36. Furthermore, Defendant knew its calls were unwanted as it used multiple different phone numbers to avoid its calls from being effectively blocked.

37. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that her privacy had been invaded by Defendant.

**DIRECT AND VICARIOUS LIABILITY**

38. Without the benefit of discovery, because "Summit Financial" was disclosed as the calling party, Plaintiff understands and therefore alleges Defendant directly placed the calls at issue.

39. However, if some or all of the calls were placed by third-party/parties on behalf of Defendant, Plaintiff alleges in the alternative, that Defendant is vicariously liable for those calls.

40. On May 9, 2013, the FCC determined that telemarketers like Defendant cannot avoid liability by outsourcing telemarketing to third-parties:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

41. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.*, at 6587 n. 107.

42. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at p. 6593.

43. If Defendant directly sent the calls at issue to Plaintiff and the putative class members, Defendant is directly liable for the placing of those calls.

44. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers.

45. If Defendant did not directly send the calls to the putative class members, Defendant's third-party telemarketers had actual and/or apparent authority to act on behalf of Defendant.

46. Likewise, on information and belief, Defendant also ratified its agents' violations of the TCPA by accepting proceeds from sales initiated by unlawful telemarketing communications.

47. Defendant controlled or had the right to control the marketing activities of those acting on its behalf.

48. Defendant acted as a principal to telemarketing agent(s) who were acting on their behalf.

49. Defendant is not permitted under the law to outsource and contract their way out of liability by directing and benefitting from their agents' TCPA violations.

50. For the count identified below, if Defendant directly sent the calls issue, they are directly liable. Alternatively, to the extent any calls were placed by a third-party agent(s) acting on Defendant's behalf, Defendant is vicariously liable for those unlawful communications.

## CLASS ALLEGATIONS

51. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

52. Plaintiff seeks to represent the following classes:

> **National Do-Not-Call Registry (NDNC) Class:** All persons in the United States who (1) received two or more telemarketing calls/voicemails to their telephone number; (2) within any 12-month period; (3) while such number was registered with the National Do-Not-Call Registry for over thirty days; (4) which were placed by or on behalf of Defendant; (5) from four years prior to the date of this complaint through the date the Court certifies the class.
>
> **Internal Do-Not-Call Registry (IDNC) Class:** All persons in the United States who (1) received two or more calls or voicemails to their telephone number; (2) within any 12-month period; (3) placed by or on behalf of Defendant; (4) where at least one of those calls were placed after telling Defendant to stop calling; (5) from four years prior to the date of this complaint through the date the Court certifies the class.

53. Excluded from the Classes are any entity in which Defendant have a controlling interest or which has a controlling interest in Defendant, and Defendant's owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to amend or modify the class definitions consistent with the record.

54. The putative class members' identities are readily ascertainable from Defendant's records or records within Defendant's control.

55. Plaintiff's claims are typical of the class members, as all are based on the same facts and legal theories.

56. Plaintiff will fairly and adequately protect the interests of the Classes defined in this complaint. Plaintiff will fairly and adequately protect the interests of the class members insofar and Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter.

57. Neither the Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue this class action lawsuit.

58. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions.

59. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

60. Class Members are so numerous that the individual joinder of all class members is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

61. Common questions of law and fact exist to all Class Members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to the following:

a) Whether Defendant scrubs or otherwise consults the federal Do Not Call registry before calling numbers;

b) Whether the calls and voicemails were "solicitations" as defined by 47 U.S.C. § 227(a)(4);

c) Whether Defendant's conduct violates 47 U.S.C. § 227(c) and the corresponding rules and regulations implementing the TCPA;

d) Whether Defendant properly implemented an internal do-not-call policy;

e) Whether Defendant employs proper mechanisms to obtain consumer consent before sending marketing messages and/or making telemarketing calls; and

f) Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

62. Plaintiff and the putative class members have claims arising out of Defendant's uniform course of conduct, namely improperly placing solicitation calls to Plaintiff and the putative class members.

63. The class action mechanism is superior to other available means for the fair and efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgments.

64. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

65. Based on discovery and further investigation, Plaintiff may, in addition to moving for class certification, use modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23. Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

66. Based on information and belief, Defendant continues to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendant's conduct and to prevent irreparable harm to Plaintiff and Class members for which they have no adequate remedy at law.

**COUNT I**
**VIOLATION OF FEDERAL DO-NOT-CALL RULES**
**47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)**

67. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

68. Plaintiff brings this Count individually and on behalf of all others similarly situated.

69. The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one solicitation call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii), (e).

70. The penalty for each call made in violation of the TCPA's restrictions on placing telemarketing calls to numbers registered on the National Do Not Call Registry is $500 per violation and up to $1,500 per violation if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

71. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5)(A).

72. By calling Plaintiff and the putative class members after their numbers were registered on the National Do Not Call Registry, Defendant violated the TCPA, including but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

73. On information and belief, Defendant and/or its agents routinely make outgoing calls or place voicemails to residential and cellular telephones in the regular course of their telemarketing campaigns alleged above. Defendant violated 47 C.F.R. § 64.1200(c) by initiating two or more telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff and the other NDNC Class members. Defendant violated 47 C.F.R. § 64.1200(c).

74. Defendant's violations are knowing and willful because Defendant knew or should have known that Plaintiff and NDNC Class members had their numbers registered on the Do Not Call Registry.

75. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, recklessly, willfully and absent any legal justification or excuse.

76. Plaintiff and NDNC Class members are entitled to damages of $500.00 per violation for each call placed and voicemail sent by Defendant and up to $1,500.00 per violation if the Court finds Defendant willfully violated the TCPA.

77. Plaintiff, individually, and on behalf of the other NDNC Class members, seeks injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendant to stop their violations of the TCPA.

## COUNT II
## VIOLATION OF INTERNAL DO-NOT-CALL RULES
## 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)

78. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

79. Plaintiff brings this Count individually and on behalf of all others similarly situated.

80. Section 227(c) of the TCPA requires the FCC to enact regulations to protect residential telephone subscribers' privacy rights. A private right of action exists for failing to maintain and/or provide internal do-not-call policies. 47 U.S.C. § 227(c)(5).

81. Through those powers delegated by Congress, the FCC promulgated regulations including CFR 64.1200(d) and (e) which provide in relevant part:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made [and] must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. . . .
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

47 C.F.R. § 64.1200(d), (e).

82. Defendant and/or their agents violated 47 C.F.R. § 64.1200(d)(3) by making telemarketing calls while they failed to honor consumer requests not to receive calls from or on behalf of Defendant, and/or did not record such requests. Even after Plaintiff clearly expressed her desire not to receive any more telephone calls from Defendant, it placed additional calls and voicemails to Plaintiff. Defendant fail to honor consumer requests not to receive calls from or on behalf of Defendant.

83. On information and belief, and in addition or the alternative, Defendant and/or their agents violated 47 C.F.R. § 64.1200(d)(2) by making telemarketing calls while they had failed to train their personnel in the existence and use of their do-not-call list. Plaintiff alleges violations of 47 C.F.R. § 64.1200(d) above. To the extent Defendant claim they instituted and maintained procedures and minimum standards prescribed by 47 C.F.R. § 64.1200(d), but that their personnel made a mistake implementing their do-not-call list, Defendant failed to adequately train their personnel.

84. Defendant violated 47 C.F.R. § 64.1200(d) by initiating two or more telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff and the other IDNC Class members while failing to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d).

85. Defendant violated Plaintiff's rights under § 227(c) and CFR § 64.1200(d) through the aforementioned acts and omissions.

86. Defendant' violations were knowing and willful because they knew they had failed to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d) in the manner alleged above.

87. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, recklessly, willfully and absent any legal justification or excuse.

88. Plaintiff and IDNC Class members are entitled to damages of $500.00 per violation for each call placed and voicemail sent by Defendant and up to $1,500.00 per violation if the Court finds Defendant willfully violated the TCPA.

89. Plaintiff, on behalf of herself, and on behalf of the other IDNC Class members, seeks injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendant to stop their violations of the TCPA.

**PRAYER FOR JUDGMENT**

WHEREFORE, Plaintiff, Lynn Guenther, individually, and/or behalf of all other similarly situated, requests the Court grant the following relief against Defendant, Summit Financial, LLC as follows:

a. Enter an order against Defendant pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Plaintiff as the class representative for the NDNC Class and the IDNC Class;

b. Enter an order appointing Kimmel & Silverman, P.C. as class counsel for the NDNC Class and the IDNC Class;

c. Enter judgment in favor of Plaintiff and the NDNC Class for all damages available under the TCPA, including actual and statutory damages per violation of 47 U.S.C. § 227(c) consistent with proof at trial;

d. Enter a judgment in favor of Plaintiff and the IDNC Class that enjoins Defendant from violating the TCPA's regulations in the manner and/or using the means as alleged above and consistent with proof;

e. Award Plaintiff and the NDNC Class, as well as IDNC Class such further and other relief the Court deems just and appropriate.

//

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

KIMMEL & SILVERMAN, P.C.

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq. (NJ 039312011)
30 East Butler Ave.
Ambler, PA 19002
Telephone: (267) 468-5374
Facsimile: 215-540-8817
jginsburg@creditlaw.com
teamkimmel@creditlaw.com
*Attorneys for Plaintiff*

Dated: February 13, 2026